IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH WOODS, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| POLICE CHIEF CARMEN D. PETTINE, et al., | : NO. 12-5608 |
| Defendants. | : |

MEMORANDUM

Tucker, C. J.                                                                                                     March_____, 2015

       Currently before the Court is Defendants Jere Goodman, Thomas McDermott, and Daniel Wallower's Motion for Summary Judgment and Concise Statement of Stipulated Material Facts (Doc. 23), Plaintiff Kenneth Woods' Response in Opposition to Motion for Summary Judgment and Concise Statement of Disputed Facts (Doc. 25), and Defendants Jere Goodman, Thomas McDermott, and Daniel Wallower's Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 26).  Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment.

**I.     FACTUAL BACKGROUND[1]**

       Because the Court writes primarily for the parties, the Court sets forth only those facts that are relevant to its conclusion.  Sometime after midnight on September 29, 2010, Defendant, Detective Jere Goodman ("Det. Goodman") of the Haverford Township Police Department, was assigned to investigate a motor vehicle collision. (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 7;

---

[1] The facts described herein are undisputed unless otherwise noted. When in dispute, all reasonable inferences will be drawn in Plaintiff Woods' favor as the non-moving party.

1

Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  This motor vehicle collision resulted in the death of one person and the serious injury of a second person. (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 7; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  When Det. Goodman arrived at the scene, he learned that the vehicle that caused the collision was a black Land Rover which had been stolen from its owner on September 28, 2010.  (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 8; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  Co-Defendant and Officer Thomas McDermott ("Officer McDermott") witnessed the collision, and Det. Goodman requested and received a handwritten witness statement of the incident from Officer McDermott.  (*See* Pl.'s Resp. in Opp'n to Defs.' Summ. J. 8; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)

Later, on September 29, 2010, Det. Goodman applied for and obtained a search warrant for the Land Rover and executed the search warrant that same day.  (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 9; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  A search of the Land Rover by county detectives uncovered, among other things, latent fingerprints and a Samsung Cricket cell phone.  (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 9; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  That same day, Det. Goodman prepared a police criminal complaint for Plaintiff Kenneth Woods ("Woods") and then used this document to obtain an arrest warrant for Woods. (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 10; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  Det. Goodman's criminal complaint accused Woods of being the operator of the Land Rover during the aforementioned motor vehicle collision. (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 10; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  The criminal complaint charged Woods with murder in the third degree, aggravated assault, involuntary manslaughter by vehicle, fleeing or attempting to elude an officer, accident involving

death or personal injury, reckless driving, and driving while privileges were suspended.  (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 10-11; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  Det. Goodman was the affiant in the affidavit of probable cause and in that document Det. Goodman set forth his probable cause for the issuance of the arrest warrant for Woods, namely: (1) the latent fingerprint from the stolen vehicle belonging to Woods; (2) a photograph of a black male found on the Samsung Cricket phone recovered from the stolen vehicle believed to be a photo of Woods; and (3) the eye-witness identification of Woods by Officer McDermott.  (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 11; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)

Woods was arrested and taken into custody, whereupon he was questioned and two statements were taken from him. (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 16; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  In the statements provided to Det. Goodman, Woods notes that he had an alibi for the aforementioned collision and that at the date and time it occurred, Woods was at home.  (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 16; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  Woods claims that Det. Goodman never investigated his alibi or conducted interviews with other residents of the home; however the Defendants dispute this claim.  (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 16; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  Another individual, Donnie Sayers ("Sayers"), later admitted to being the lone driver of the stolen Land Rover at the time of the crash, exculpating Woods of any involvement in the incident.  (*See* Pl.'s Resp. in Opp'n to Defs.' Summ. J. 17; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J. 2.)  On October 1, 2010, Woods was released from custody with no charges pending against him.  (*See* Compl. ¶ 13; Answer for Pettine, et al. ¶ 13.)

## II.    RELEVANT PROCEDURAL HISTORY

On October 1, 2012, Plaintiff Woods filed a Complaint in this Court against Defendants Police Chief Carmen D. Pettine ("Chief Pettine"), Sergeant Daniel Wallower ("Ser. Wallower"), Det. Goodman, and Officer McDermott of the Haverford Township Police Department. Woods also brought claims against Detective T. McCool of the Philadelphia Police Department ("Det. McCool"). Count I of Woods' Complaint asserts claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, including a conspiracy claim, a claim for violation of equal protection, a claim for violation of due process, a Fourth Amendment unlawful search and seizure claim, a Fifth Amendment claim, an Eighth Amendment claim, and a Fourteenth Amendment claim. Count II of Woods' Complaint asserts claims for false arrest and false imprisonment. Count III of Woods' Complaint asserts claims for malicious prosecution and malicious abuse of process of law. Count IV asserts a claim of negligent infliction of emotional distress. Finally, Count V asserts a claim of intentional infliction of emotional distress.

Woods' claims against Chief Pettine stem from her role in supervising, training, and disciplining police officers within the Haverford Township Police Department. (Compl. ¶ 23-25.) Det. McCool and Ser. Wallower were both sued in their personal capacity and in their capacities as police officers with the Haverford Township Police Department. (*Id.* at ¶¶ 7 and 9.) On June 13, 2013, this Court, in response to motions from all Defendants, dismissed Count IV of Woods' Complaint. Answers to the Complaint were filed by all of the Defendants on June 26, 2013. On April 21, 2014, this Court approved a stipulation by parties mandating the voluntary dismissal of all claims against Defendant Det. McCool. The instant Motion for Summary Judgment and Concise Statement of Stipulated Material Facts was filed on behalf of Defendants Det. Goodman, Officer McDermott, and Ser. Wallower (collectively, "the Defendants") on April

25, 2014.  Chief Pettine is not a party to the instant Summary Judgment Motion. (Defs.' Mot for Summ. J. 1; Defs.' Reply to Pl.'s Resp. on Opp'n to Defs.' Mot. for Summ. J. 14.)  Woods responded to Defendants' Summary Judgment Motion on June 2, 2014, and a Reply was filed on June 12, 2014.  The Court's analysis follows.

### III.  LEGAL STANDARD

Summary judgment is awarded only when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney,* 689 F.3d 288, 292 (3d Cir. 2012).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Dee v. Borough of Dunmore,* 549 F.3d 225, 229 (3d Cir. 2008).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *See Anderson*, 477 U.S. 248; *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  *See Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Under Federal Rule of Civil Procedure 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *See Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007).

5

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. 249 (citations omitted); *Jiminez v. All Am. Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. *See, e.g., Love v. Rancocas Hosp.*, 270 F. Supp. 2d 576, 579 (D.N.J. 2003); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## IV. DISCUSSION

In his Opposition to Defendants' Motion for Summary Judgment and Concise Statement of Disputed Facts, Plaintiff Woods abandons his claims for violations of the Fifth Amendment and the Eighth Amendment, negligent infliction of emotional distress, and conspiracy. (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 5.) This Court will therefore only concern itself with Woods' remaining claims of false arrest, false imprisonment, malicious prosecution, malicious abuse of process of law, intentional infliction of emotional distress, and violations of the Fourteenth Amendment, equal protection, due process, and the Fourth Amendment's restriction against unlawful search and seizure.

### *Woods' Claims for False Arrest, False Imprisonment, and Malicious Prosecution*

To establish a state or federal claim for false imprisonment or false arrest, it is necessary to show that the arrest or detention took place without the existence of probable cause. *Murphy v. Bendig*, 232 Fed. Appx. 150, 153 (3d Cir. 2007) (stating that a finding of false arrest, false imprisonment, and malicious prosecution under § 1983 and Pennsylvania law all require a lack

6

of probable cause); *see also Sheedy v. City of Philadelphia*, 184 Fed. Appx. 282, 284 (3d. Cir. 2006) (stating that probable cause defeats claims for malicious prosecution, false arrest, and false imprisonment); *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994) (noting that arrests based on probable cause are justified regardless of the arrested individual's guilt).

Likewise, for a malicious prosecution claim to stand there must be a showing that the proceedings were initiated without probable cause. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009); *Sheedy*, 184 Fed. Appx. 284; *Murphy*, 232 Fed. Appx. at 153. The proper inquiry here is not whether the person arrested actually committed the offense but whether the arresting officers had the probable cause to believe the arrested person committed the offense. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *see also Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014) ("[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction . . . It is therefore irrelevant in a probable cause inquiry whether a person is later acquitted of the crime for which she or he was arrested."). Although the probable cause inquiry is generally left to the members of a jury, a district court may conclude on summary judgment "that probable cause exists as a matter of law if the evidence, when viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding." *Minatee v. Philadelphia Police Dep't*, 502 Fed. Appx. 225, 228 (3d Cir. 2012) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-90 (3d Cir. 2000)).

The Third Circuit has stated that "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (further citations omitted); *see also Halsey*, 750 F.3d 299 (quoting *Wright v. City of Philadelphia*, 409 F.3d 595,

7

601-03 (3d Cir. 2005)) ("While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain"). The Third Circuit has also stated that "[t]he probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603.

Plaintiff Woods puts forward no legal argument as to why this Court should deny the Defendants' request for summary judgment. (Pl.'s Resp. in Opp'n to Defs.' Summ. J. 5-7.) Instead Woods argues that this Court should deny the Defendants' request because the Defendants' account of the facts is lacking, and that there remains genuine disputes as to material facts within this case. (*Id.*) However, even though Woods presents evidence pointing to disputes in the factual accounts provided by the parties, these disputes are not genuine or material.

Woods points to discrepancies between Officer McDermott's original description of the driver of the stolen Land Rover and Woods' appearance. Officer McDermott's original description stated that the driver of the stolen Land Rover was approximately twenty-five to thirty-two years in age, approximately six feet to six feet and three inches tall, with short, well-groomed black hair and a thin well-groomed beard with no mustache. (*Id.* at 12.) Meanwhile, testimony from Det. Goodman noted that Woods' drivers' license revealed his age to be 19 at the time of his arrest. (*Id.* at 12-14) Det. Goodman's testimony also noted that Woods had no beard in his drivers' license picture and that the license listed his height as five feet and six inches. (*Id.* at 12.) Woods also points to testimony from Officer McDermott that mentions the absence of visible injuries on Woods at the time of arrest. (*Id.* at 13.)

Additionally, Woods claims that he provided an alibi to the police after he had been arrested, stating that at the time of the collision he was at home. (*Id.* at 16.) Woods asserts the police never investigated this alibi, and that Woods' grandmother and mother, both of whom live with Woods, were never questioned. (*Id.*)

Woods points to these details left absent from the Defendants' Motion for Summary Judgment and argues, without citation to any legal authority, that the differences in the factual statements submitted by the parties are genuine and material on their face, thus requiring a denial of the Defendants' Summary Judgment Motion. (*Id.* at 7; Defs.' Motion for Summ. J. 1-9.) None of these factual disputes or assertions, however, create a genuine dispute as to any material fact. Officer McDermott testifies that he only saw the driver of the stolen Land Rover at nighttime for 20 to 30 seconds before the collision. (McDermott Dep. 21:23-22:4; Goodman Dep. 41:7-11.) Given the ease with which the perception of the characteristics highlighted by Woods can be altered, Woods' failure to fit the description originally provided by Officer McDermott does not exclude him from consideration outright. Facial hair can easily be changed. Adjusting seat elevation can also change the perceived height of the individual who is seated in the chair. One's age can also be misperceived without much difficulty. The persuasive nature of the discrepancies between Woods' appearance and the description used to identify the driver of the stolen Land Rover is further diminished by the presence of Woods' fingerprints at the scene of the incident and Officer McDermott's identification of Woods from a selection of photographs provided by Det. Goodman. (Goodman Dep. 27:14-28:17; McDermott Dep. 18:7-22:4, 63:11-67:1; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1 and D3.) Finally, testimony showing that Woods did not present with visible signs of having been in an auto collision does not foreclose the possibility that Woods could have been the driver of the stolen

9

Land Rover as Woods could have fled the accident with no injuries, minor injuries, or nonvisible injuries. (Goodman Dep. 43:7-12; McDermott Dep. 70:7-15.)

What is of relevance to this inquiry is not whether Woods precisely matched the description provided by Officer McDermott, but whether Det. Goodman had enough evidence to establish the probable cause needed to arrest Woods. Here, the Defendants provide adequate evidence to show that he did. The Defendants show that Det. Goodman was called to investigate the incident and Det. Goodman asked Officer McDermott to provide a handwritten witness statement giving a description of the possible suspect. (Goodman Dep. 10:12-17, 16:1-18:2.) Det. Goodman then applied for and received a search warrant to search the stolen Land Rover. (Goodman Dep. 18:3-13.) In the midst of executing the search warrant, detectives recovered latent prints from the vehicle and a cellular phone. (Goodman Dep. 21:24-22:13.) At the time, Woods' prints were the only identifiable prints taken from the vehicle. (Goodman Dep. 27:14-20.) Because Woods' fingerprints appeared at the scene of the alleged crime, Det. Goodman searched for his criminal history and placed Woods' photo into a photo array with five other black males of similar characteristics. (Goodman Dep. 27:14-28:17.) This photo array was later given to Officer McDermott in order for him to prepare a witness identification of the suspect. (Goodman Dep. 27:21-28:17; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) From the photo array, Officer McDermott identified Woods as the suspect. (Goodman Dep. 37:6-40:7; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) Next, a second search warrant was obtained and executed, and the cellular phone found at the scene of the crash was searched. (Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) During a search of the cellular phone's "saved images" section, a picture of a black male was found. (Goodman Dep. 37:6-40:7; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.)

Authorities then determined that this picture belonged to Woods by comparing this image to Woods' driver's license picture. (Goodman Dep. 37:6-40:7; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) Finally, using this information, Det. Goodman in consultation with Deputy District Attorney Daniel McDevitt ("McDevitt") prepared an affidavit of probable cause and a police criminal complaint, which was then approved by Magistrate Judge John Capuzzi ("Magistrate Judge Capuzzi"). (Goodman Dep. 41:12-42:8; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) Woods does not refute any of this evidence nor does he question the factual veracity of the testimony provided by the Defendants.

Central to a determination on the presence of probable cause, is the evidence that Det. Goodman's affidavit of probable cause was submitted to and approved by Magistrate Judge Capuzzi and an arrest warrant was issued for Woods' arrest. (Goodman Dep. 41:12-42:8; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) However, the issuance of an arrest warrant by a detached judicial authority does not alone provide a shield against a false arrest claim. *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000); *Craig v. Collins*, No. 13-1873, 2013 WL 5271521, at *5 (E.D. Pa. Sept. 17, 2013). The Third Circuit has stated that in cases involving a claim for a false arrest made pursuant to a warrant, the plaintiff must show "by a preponderance of the evidence: (1) that a police officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010) (citing *Wilson*, 212 F.3d at 786-87.)

Here, Woods presents no evidence suggesting that Det. Goodman's affidavit of probable cause contained either false statements or omissions of a material nature. (Defs.' Reply to Pl.'s

11

Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) Woods highlights the difference between Woods' appearance and the original description of the driver of the stolen Land Rover, however as noted above, such differences are not material. Woods attacks the lack of thoroughness of Det. Goodman's investigation by focusing on the fact that Det. Goodman and his fellow officers did not investigate the alibi provided by Woods: that he was at home during the collision and could not have been present at the scene of the alleged crime. (Goodman Dep. 49:19-50:21.) However, the Haverford Township Police were only made aware of Woods' alibi *after* Woods was already arrested and thus after the initial probable cause determination was made. (*Id.* at 41:12-50:21.) Moreover, the Third Circuit has stated that authorities are not required to address all conflicting pieces of evidence or always accurately make determinations of credibility. *Wright*, 409 F.3d at 603. Police officers are instead entitled to draw reasonable inferences, based on their own personal knowledge and prior experience. *United States v. Ortiz*, 422 U.S. 891, 897 (1975).

      In the instant case, the parties present evidence showing that Det. Goodman acted only after obtaining fingerprints from the scene of the crash matching Woods' fingerprints, an eye-witness identification of Woods from an officer at the scene of the alleged offense, and another identification from a photo found within a cellular phone retrieved at the scene of the alleged incident. Prior to Woods' arrest, Det. Goodman also consulted with Deputy District Attorney McDevitt and received approval from a detached, neutral magistrate. Rather than jumping to rash conclusions, Det. Goodman's actions appear to be grounded in the evidence presented to him at the time of the arrest. This Court finds that probable cause existed during the arrest of Woods on September 30, 2010.[2]

---

[2] It should also be noted that Woods presents no claim based on the length of time he was in custody, and even if such a claim had been made, it would fail. Indeed, evidence presented by the parties shows that the Haverford Township Police were expeditious in releasing Woods once Sayers turned himself into the authorities and informed them of Woods' innocence. (Goodman Dep. 54:4-21; Woods Dep. 20:6-17, 21:21-22:10; Defs.' Reply to

The presence of probable cause in this case not only terminates state and federal claims for false arrest and false imprisonment, but also state and federal claims for malicious prosecution as well. *See Kossler*, 564 F.3d at 186 (stating that the lack of probable cause is required for a malicious prosecution claim under § 1983); *Merkle*, 211 F.3d at 791 (listing the lack of probable cause as required for a malicious prosecution claim under Pennsylvania law). Accordingly, having found that probable cause existed with regard to Woods' arrest, Woods' state and federal false arrest, false imprisonment, and malicious prosecution claims are dismissed.

### *Woods' Due Process Claim*

Woods fails to identify which facts give rise to his due process claim. The Supreme Court has stated that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Woods' allegations of false arrest, imprisonment, and prosecution most readily fall under the Fourth Amendment and not the Fourteen Amendment. Moreover, Woods fails to articulate a claim for some procedural due process violation or present evidence supporting such a claim. As a result his due process claim must fail.

---

Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D4, D5, and D7.) Woods was arrested early in the morning of September 30, 2010 and the paperwork to withdraw the charges against him was drawn up towards the end of the same day. (Goodman Dep. 54:4-21; Woods Dep. 20:6-17, 21:21-22:10; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D4, D5, and D7.) Woods was released from police custody on October 1, 2010, one day after he was arrested. (Goodman Dep. 54:4-21; Woods Dep. 20:6-17, 21:21-22:10; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D4, D5, and D7.)

*Woods' Equal Protection Claim*

Plaintiffs alleging an equal protection claim must show that the defendant's actions: (1) had a discriminatory effect; and (2) were motivated by a discriminatory purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-66 (1977). Woods neither provides argument for nor presents evidence to support his equal protection claim. Therefore, his equal protection claim is dismissed.

*Woods' Malicious Abuse of Process Claim*

The state of Pennsylvania recognizes a cause of action for malicious abuse of process where the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. *Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 381-83 (Pa. Super. Ct. 1993); *Giordano v. Murano-Nix*, No. 12-7034, 2014 WL 62459, at *12-14 (E.D. Pa. Jan. 8, 2014). Malicious abuse of process exists where there is an abuse or "perversion" of the legal process itself, with no regard to how that process was initiated. *Giordano*, 2014 WL 62459, at *12 (citing *Gen. Refractories Co. v. Fireman's Funds Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003)); *Rosen*, 627 A.2d at 192 (citing Restatement (Second) of Torts, § 682). As opposed to malicious prosecution, a claim with which it is often paired, malicious abuse of process involves a prosecution that is initiated in a legitimate manner but "thereafter is used for a purpose other than that intended by law." *Mitchell v. Guzick*, 138 Fed. Appx. 496, 502 (3d Cir. 2005) (citing *Jennings v. Shuman*, 567 F.2d 1213, 1217-19 (3d Cir. 1977)); *Giordano*, 2014 WL 62459, at *12 (citing *Napier v. City of New Castle*, No. 06-1368, 2007 WL 1965296, at *6 (W.D. Pa. July 3, 2007)). Here, because the use of process itself and not the initiation of the process is at issue, the presence or

absence of probable cause is irrelevant.  *Jennings*, 567 F.2d at 1217-19; *Rosen*, 426 Pa. Super. at 381-83; *Mannery v. Miller*, No. 07-315, 2007 WL 1395358, at *4 (W.D. Pa. May 9, 2007).

In the instant matter, the Court finds that there was no malicious abuse of process.  Woods' Complaint lists no factual allegations detailing the nature of any abuse of process brought upon by any of the Defendants.  Woods also presents no evidence at all that suggests bad faith or a perversion of process in this case by any of the Defendants who investigated the automobile crash.  Woods does not present evidence which suggests some illegitimate motive or purpose on the part of the Defendants.  Additionally, as detailed above, the charges against Woods were withdrawn shortly after Sayers confessed to being the driver of the stolen Land Rover, suggesting that Woods' detention was at least related to the legitimate purpose of identifying the proper suspect of the alleged incident.  (Goodman Dep. 54:4-21; Woods Dep. 21:21-22:10; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D4, D5, and D7.)  *See Ciolli v. Iravani*, 625 F. Supp. 2d 276, 296 (E.D. Pa. 2009); *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984) ("A cause of action for abuse of process requires some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions") (further citations and grammatical marks omitted).

### *Woods' Intentional Infliction of Emotional Distress Claim*

To establish a Pennsylvania state law claim for intentional infliction of emotional distress, a plaintiff must demonstrate "intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."  *Reedy*, 615 F.3d at 231-32 (citing *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)); *Davis v. Solid Waste Services, Inc.*, 20 F. Supp.

3d 519, 537 (E.D. Pa. 2014) (further citations omitted). The standard requires alleged conduct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reedy*, 615 F.3d 231-32 (citing *Field v. Philadelphia Elec. Co.*, 388 Pa. Super. 400, 428 (Pa. Super. Ct. 1989)); *Davis*, 20 F. Supp. 3d at 537 (citing *Rinehimer v. Luzerne Cnty. Coll.*, 372 Pa. Super. 480, 494 (Pa. Super. Ct. 1988)). A showing of physical harm caused by the defendant's outrageous conduct is also required under the standard. *Reedy*, 615 F.3d at 231-32 (citing *Swisher*, 868 A.2d at 1230); *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).

Here, Woods presents no medical history, expert testimony, or other evidence to establish that he has suffered from any form of physical or psychological harm. Additionally, the outrageous and extreme conduct needed to pass muster under the standard established by Pennsylvania law is nowhere to be found in the instant matter. As stated previously, Woods' arrest by the Haverford Township Police took place with the presence of probable cause. According to the evidence presented, Det. Goodman acted on the information available, which at the time of arrest linked Woods alone to the scene of the alleged incident. (Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1 and D3; Goodman Dep. 27:14-20, 38:5-40:5.) Det. Goodman also attained the approval of a detached judicial official. (Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.) Given the presence of probable cause for Woods' arrest and the lack of the required evidence regarding injury, Woods' claim for intentional infliction of emotional distress must fail.

*Qualified Immunity and Woods' Unlawful Search and Seizure Claims*

Qualified immunity provides immunity from civil suit to police officers who reasonably believe their conduct to be lawful in light of clearly established law and the information the arresting officers possessed. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *Wood v. Moss*, 134 S.Ct. 2056, 2059 (2014) (further citations omitted) ("The dispositive inquiry . . . is whether it would have been clear to a reasonable officer in the agents' position that their conduct was unlawful in the situation they confronted."). This immunity holds even for police officers that "reasonably but mistakenly conclude that probable cause is present." *Hunter*, 502 U.S. at 227; *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (further citations omitted) ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact").

As stated above, the evidence presented by the parties shows that Det. Goodman followed the evidence available to him, starting with items taken from the remains of the crash itself and further supported by identification from an eye-witness at the scene of the incident. This evidence was reviewed by Deputy District Attorney McDevitt and then by Magistrate Judge Capuzzi. (Goodman Dep. 41:12-42:8; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Summ. J., Ex. D1.). The Supreme Court has stated that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, 'in objective good faith.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). The Supreme Court has also recognized an exception to such a clear indication if it is "obvious that no

reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 132 S. Ct. at 1245 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The threshold for establishing this exception is high. *Messerschmidt*, 132 S.Ct. at 1245.

Woods makes no argument nor does he present any evidence specifically addressing his Fourth Amendment arguments. Additionally, this Court has already concluded above that with regard to the September 30, 2010 arrest of Woods, Det. Goodman and the other Defendants acted with probable cause. As such, they are shielded from suit by qualified immunity and Woods' Fourth Amendment search and seizure claims, along with his other claims under § 1983 must fail.

## V.  CONCLUSION

For the reasons more fully set forth above, the Court will grant the Defendants Jere Goodman, Thomas McDermott, and Daniel Wallower's Motion for Summary Judgment and Concise Statement of Stipulated Material Facts in full. An appropriate order follows.